UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENITA WEBB-EATON,

    Plaintiff,

v.

WAYNE COUNTY COMMUNITY
COLLEGE DISTRICT, CURTIS L.
IVERY, DORIS FIELDS, CLARISSA
SHAVERS, MADDIE DIEDO,
PRADATSUNDARASAR SUKHTA,
DORESEA LEWIS, MARY BEYERS,
and DEBORAH WATSON,

    Defendants.
_____/

Case No. 12-14821
Hon. Patrick J. Duggan

## **OPINION AND ORDER**

On October 30, 2012, Plaintiff Tanita Webb-Eaton, a former student in Defendant Wayne County Community College District's ("WCCCD") nursing program, filed this lawsuit against WCCCD and various individuals employed by WCCCD (collectively, "Defendants"). In her Complaint, Plaintiff asserts the following counts against Defendants: (1) Count I – violations of the Americans with Disabilities Act ("ADA"); (2) Count II – violations of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"); and (3) Count III – intentional infliction of emotional distress.

This matter is presently before the Court on Defendants' Motion to Dismiss filed on April 9, 2013 pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and the Court held a motion hearing on July 10, 2013. For the reasons stated herein, the Court grants Defendants' Motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case concerns events that transpired while Plaintiff, who suffers from a latex allergy, attempted to obtain a degree from WCCCD's nursing program. (Compl. ¶ 17.) Perhaps it goes without saying that individuals studying nursing are exposed to latex products throughout their course of study and the nursing students at WCCCD are no exception. (*Id.*) On at least two separate occasions, Plaintiff was exposed to latex at WCCCD and this exposure caused her to have serious allergic reactions. (*Id.*)

The first such incident occurred during the spring of 2009. Despite "having previously informed her instructor, Glenn Burkett[,] of her latex allergies . . ., [Plaintiff] was forced to participate in activities involving latex materials[.]" (*Id.*) As a result, Plaintiff was taken to the emergency room at Detroit Receiving Hospital and was ultimately transferred to Beaumont Hospital, where she suffered seizures. (*Id.* at ¶¶ 17-19.) Following this incident, Plaintiff's physician prescribed Benadryl, which she "began ingesting . . . due to the fact that she was being forced to function while constantly surrounded by latex materials[.]" (*Id.* at

¶ 21.) The Benadryl "induc[ed] a slight drowsiness in Plaintiff" and had a deleterious impact on Plaintiff's ability "to perform at an optimal capacity[.]" (*Id.*)

In September 2011, Plaintiff discussed her latex allergy with other instructors and staff members. Defendants Pradatsundarasar Sukhta and Maddie Diedo indicated that Plaintiff would be unable to avoid latex while studying nursing and that WCCCD staff would not be able to accommodate additional or separate instruction sessions to teach Plaintiff what she "should have learned in class during the instruction involving latex materials." (*Id.* at ¶¶ 23-24.) Some of the individual Defendants even told Plaintiff that she could not succeed as a nurse because of her allergy. (*Id.* at ¶¶ 23-24, 33.) Eventually, Plaintiff learned from another instructor that she could obtain a non-latex catheter for class and was even given twenty dollars by an instructor to obtain the item, but was required to do so on her own time. (*Id.* at ¶¶ 25-26.) When this item was damaged, however, Plaintiff had to purchase a replacement with her own funds. (*Id.* at ¶ 27.)

In the fall of 2011, while Plaintiff was attempting to obtain the non-latex catheter and still taking Benadryl, Plaintiff "was forced to continually be instructed on and to execute her laboratory practices on manikins made of latex[.]" (*Id.* at ¶ 29.) During this period, Plaintiff suffered a second serious allergic reaction – exhibiting rashes and low oxygen levels – due to exposure to a latex catheter. (*Id.*

3

at ¶¶ 30-31.) EMS was called, treated Plaintiff with oxygen, and recommended a hospital visit, which Plaintiff declined. (*Id.*)

The very next day, Defendant Diedo refused to provide Plaintiff with latex gloves to complete an assignment. (*Id.* at ¶ 32.) As a result, "Plaintiff retrieved her own non-latex gloves from her automobile and completed" the assignment." (*Id.*)

At some point, WCCCD presented Plaintiff with a document labeled "Latex Allergy/Sensitivity Waiver Statement," which Plaintiff refused to sign. (*Id.*, Ex. A.) Plaintiff did, however, handwrite her objections to the waiver on the document. (*Id.*) Plaintiff objected on the grounds that WCCCD had knowledge of her allergy and that she "was originally told I would be accommodated[.]" (*Id.*)

In 2012, Plaintiff "cease[d] her matriculation" at WCCCD, at least in part because of Defendants' failure to accommodate her latex allergy. (*Id.* at ¶ 77.) This lawsuit, filed on October 30, 2012, followed.

On April 9, 2013, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court construes as a Rule 12(c) motion.[1]

---

[1] Motions filed under Federal Rule of Civil Procedure 12(b), "must be made before pleading if a responsive pleading is allowed." Having filed an Answer to Plaintiff's Complaint, (ECF No. 6), which is undoubtedly a "pleading" as defined in Federal Rule of Civil Procedure 7(a)(2), Defendants should have filed a Rule 12(c) motion for judgment on the pleadings. This technical defect is not fatal, as the same standard of review governs motions filed under both Rule 12(b)(6) and

## II. STANDARD OF REVIEW [2]

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under the standards applicable to motions brought under Rule 12(b)(6). *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). As with Rule 12(b)(6) motions, a Rule 12(c) motion allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), the Court must construe the complaint in favor of the plaintiff and determine whether plaintiff's factual allegations present claims plausible on their face. This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Id.* 550 U.S. at 557, 127 S. Ct. at 1965. Even though the

---

Rule 12(c). *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). Relatedly, despite bearing the label "Defendants' Motion to Dismiss," Defendants' opening paragraph indicates that summary judgment is sought in the alternative. However, because discovery has not yet commenced and because Defendants do not rely on matters outside of the pleadings, the Court ignores the reference to summary judgment and construes Defendants' motion in accordance with the standards governing Rule 12(c) motions.

[2] See note 2, *supra*.

complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief [.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do

not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

### III. ANALYSIS

As set forth in the facts, Plaintiff suffers from a latex allergy and this allergy interfered with her ability to participate fully in WCCCD's nursing curriculum. After a series of incidents wherein Plaintiff was exposed to latex and had severe allergic reactions, Plaintiff initiated this action. In Count I of her Complaint, Plaintiff alleges that Defendants violated the ADA by failing to accommodate Plaintiff's latex allergy. In Count II, Plaintiff alleges that Defendants violated the PWDCRA by failing to accommodate Plaintiff's latex allergy. Finally, in Count III, Plaintiff alleges that Defendants engaged in conduct tantamount to intentional infliction of emotional distress. The Court addresses Counts II and III together as they both arise under the laws of the State of Michigan.

### A. Plaintiff's Federal ADA Claim

Count I of Plaintiff's Complaint seeks to hold Defendants accountable for the school's purported failure to accommodate Plaintiff's latex allergy as required by the ADA. Defendants contend that this claim must be dismissed because

Plaintiff's allergy is not a disability within the meaning of the ADA. (Defs.' Br. 2-6, ECF No. 11.)

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual[.]" 42 U.S.C. § 12112(a). The ADA requires covered entities to provide "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity." *Id.* at § 12112(b)(5)(A). These statutory provisions establish that those who do not have a disability are not entitled to reasonable accommodations or any other protections afforded by the ADA. *Cf. Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003) (indicating that to prevail on an ADA claim, a plaintiff must first establish that she is disabled within the meaning of the Act) (citation omitted).

Under the ADA, "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A). Accordingly, in order to conclude that a person is disabled, a court must find (1) there is a physical impairment, (2) which affects a major life activity identified by the plaintiff, and (3) the impairment substantially limits that life activity. *Bragdon v. Abbot*, 524 U.S. 624, 631, 118 S. Ct. 2196, 2201 (1998).

8

For purposes of the instant motion, Defendants assume that Plaintiff's latex allergy is a physical impairment. (Defs.' Br. 3.) Although Plaintiff neglected to identify the major life activity affected by this allergy in her Complaint, Plaintiff's Response points to "learning" as the pertinent life activity. (Pl.'s Resp. 10, ECF No. 15 (emphasis removed).) Learning is specifically included in the nonexhaustive list of major life activities provided in 42 U.S.C. § 12102(2)(A). Accordingly, Plaintiff has satisfied two of the three components required to establish that she is disabled. The remaining issue is whether Plaintiff's latex allergy substantially limits her ability to learn, which the Court addresses immediately below.

"An impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*; *see also id.* at § 1630.2(j)(1)(i) ("'[s]ubstantially limits' is not meant to be a demanding standard."). While "not every impairment will constitute a disability within the meaning of this section[,]" 29 C.F.R. §

1630.2(j)(1)(ii), courts are to construe the phrase "'substantially limits' . . . broadly in favor of expansive coverage," *id.* at § 1630.2(j)(1)(i).[3]

Plaintiff contends that her latex allergy prevented her from effectively participating in WCCCD's nursing program and that as a result, her ability to learn was substantially limited. (Pl.'s Resp. 11.) Defendants, on the other hand, seek dismissal on the ground that Plaintiff's latex allergy does not substantially limit learning within the meaning of the ADA. (Defs.' Reply 1-3, ECF No. 16.) The Court believes that Defendants have the better argument.

While the Court is sympathetic to the obstacles facing Plaintiff in her attempts to realize her goal of becoming a nurse, the Court is not persuaded by Plaintiff's arguments that her allergy substantially limits her ability to learn. The "major life activities" listed in 42 U.S.C. § 12102(2)(A), such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking," are all "basic functions, not more specific ones such as being an astronaut, working as a firefighter, driving a race car, or learning by playing Big Ten basketball[,]"

---

[3] The Court notes that the cases cited by the parties and the cases discussed herein pre-date the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553. The ADAAA, enacted in response to Supreme Court decisions imposing a burden on ADA plaintiffs that Congress did not intend, made clear that "the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv). It bears repeating, however, that this does not mean that "every impairment will constitute a disability within the meaning of" the ADA. *Id.* § 1630.2(j)(1)(ii).

*Knapp v. Northwestern Univ.*, 101 F.3d 473, 481 (7th Cir. 1996) (rejecting plaintiff's argument that he was disabled within the meaning of the ADA due to a heart defect that precluded him from playing on the University's basketball team).[4] As the *Knapp* Court explained, to constitute a disability under the ADA, an impairment "must limit learning *generally*." *Id.* (emphasis added). Properly understood then, learning is a major life function but learning to be a nurse is not. Thus, the inability to pursue a particular course of study does not amount to a substantial limitation in the major life activity of learning.

While it may be true that Plaintiff's latex allergy hindered her ability to study nursing, there is no evidence – by way of allegation or otherwise – that Plaintiff's allergy prevented her from successfully completing a course of study in mathematics, teaching, social work, or any other field where direct exposure to latex would be a non-issue.[5] In fact, the Court notes that Plaintiff alleges that she obtained two degrees from WCCCD, one in 2010 and the other in 2011, and that

---

[4] *Knapp* adjudicated a claim under the Rehabilitation Act. *Knapp v. Northwestern Univ.*, 101 F.3d. 473, 481 (7th Cir. 1996). However, the analysis of claims under the Rehabilitation Act and the ADA is roughly parallel, and "cases construing one statute are instructive in construing others." *See, e.g.*, *Andrews v. Ohio,* 104 F.3d 803, 807 (6th Cir. 1997).

[5] While Plaintiff's latex allergy is episodic in that the impairment occurs only when exposed to latex products, there is no indication that the allergy would substantially limit Plaintiff's ability to learn other subjects if the allergy was perpetually active. *Cf.* 29 C.F.R. § 1630.2(j)(1)(vii) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.").

"prior to her entry into the Nursing program, she remained on the Dean's List and was inducted into the International Honors Society." (Compl. ¶ 13.) This amounts to an admission that Plaintiff's latex allergy did not substantially limit her ability to learn generally. *Cf. Wong v. Regents of the Univ. of Cal.*, 379 F.3d 1097, 1108-1109 (9th Cir. 2004) (holding, in a pre-ADAAA case, that a student's prior record of "academic success . . . without special accommodation precludes the possibility that he could establish that" his "impairment substantially limits his ability to learn as a whole" as opposed to merely his ability "to keep up with a rigorous medical school curriculum[]"). Put differently, Plaintiff's impairment does not rise to the level of being a disability within the meaning of the ADA because it does not limit her ability to learn "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

This Court "decline[s] to define the major life activity of learning in such a way that the [ADA] applies whenever someone wants to" study nursing. *Knapp*, 101 F.3d at 481. While the Court is aware that major life activities are defined in a more individualized manner as part of the "substantial limitation" analysis, "any narrowing of what constitutes learning for a particular individual occurs within reasonable limits" and coverage under the ADA is not "based on every dream or desire that a person may have." *Knapp*, 101 F.3d at 481. Rather, it is based on the extent to which the impairment restricts the major life activity identified by the

plaintiff. *Id.* Because Plaintiff has not presented a plausible claim that she is generally limited in her ability to learn, she has failed to adequately plead that she is disabled and therefore entitled to invoke the ADA's protections.

For the reasons above, Plaintiff's ADA claim fails to show an entitlement to relief. The Court, therefore, dismisses Count I with prejudice.

**B.    Plaintiff's State Law Claims**

Count II of Plaintiff's Complaint alleges that Defendants violated the PWDCRA, specifically, Michigan Compiled Laws § 37.1402(a)-(b), which prohibits educational institutions from discriminating against disabled individuals. Defendants, citing authority that "[t]he definition of disability is essentially the same under both the ADA and the PWDCRA[,]" argue that Plaintiff's PWDCRA claim should be dismissed for the same reasons as her ADA claim. (Defs.' Br. 8 (citing *Peden v. City of Detroit*, 470 Mich. 195, 680 N.W.2d 857 (2004).) Specifically, Defendants contend that dismissal is appropriate because Plaintiff has failed to demonstrate that her allergy "substantially limits one or more of the major life activities of that individual[.]" (*Id.* at 7 (citing Mich. Comp. Laws § 37.1103(d)(i)(C)[6].) Plaintiff does not challenge Defendants argument, and in fact, seems to agree that the ADA and PWDCRA define disability in an analogous fashion. (Pl.'s Br. 13.) The Court, however, is not persuaded that the Michigan

---

[6] The Court notes that the Michigan statute cited by Defendants does not contain the "substantially limits" language. See note seven, *infra*.

13

courts would apply the definition of disability supplied by Defendants and acquiesced to by Plaintiff in a case brought against an educational institution.[7] Because the PWDCRA is a creature of state law, the Court believes that the resolution of this issue is best left to the state courts and declines to exercise supplemental jurisdiction over Count II.

Relatedly, because the Court declines to exercise jurisdiction over Plaintiff's PWDCRA claim, the Court finds it appropriate to decline exercising supplemental jurisdiction over Count III of Plaintiff's Complaint, which purports to state a claim for intentional infliction of emotional distress.

Title 28 U.S.C. § 1367 permits district courts to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). In *Carlsbad Technologies, Inc. v. HIF Bio, Inc.*, the Supreme Court emphasized that once a district court has dismissed all claims over which it possessed independent jurisdiction, the decision regarding whether to exercise supplemental jurisdiction

---

[7] With respect to claims against educational institutions brought pursuant to article four, "disability" is defined as "[a] determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic . . . is unrelated to the individual's ability to utilize and benefit from educational opportunities, programs, and facilities at an educational institution." Mich. Comp. Laws § 37.1103(d)(i)(C). The "substantially limits" language, while present elsewhere in the Michigan act, is absent from the definition of disability relevant in this case. That Plaintiff does not challenge this definitional difference does not authorize the Court to misapply the law as enacted by the Michigan legislature.

over remaining state-law claims is "purely discretionary." 556 U.S. 635, 639-40, 129 S. Ct. 1862, 1866-67 (2009). In deciding whether to retain jurisdiction over state-law claims, a district court should engage in a multi-factor balancing test considering the "values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)). Of greatest consequence to this case, when a district court dismisses all claims over which it had original jurisdiction, the balance of considerations is likely to weigh in favor of declining to exercise supplemental jurisdiction. *Id.* at 952 (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.")).

In the instant case, the Court has dismissed the only federal cause of action – Plaintiff's ADA count – pursuant to Federal Rule of Civil Procedure 12(b)(6) and finds that dismissal without prejudice is appropriate as to the remaining state-law claims for several reasons. First, in disposing of the federal claim, the Court has not resolved a related state-law issue. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521-22 (6th Cir. 2007). The basis for disposing of the federal ADA claim, an anti-discrimination statute bearing similarities to the PWDCRA, was

15

based on the ADA's definition of "disability." This definition does not resolve the PWDCRA claim and the Court finds it "important that courts refrain from glossing over relevant differences between [the ADA and the PWDCRA] and conflating them in a manner unwarranted by their [sic] language." *Peden*, 470 Mich. at 217 n.22, 680 N.W.2d at 870 n.22. Moreover, resolution of the ADA claim has no impact on Plaintiff's intentional infliction of emotional distress claim. Second, it does not appear as though the need to avoid duplicative litigation is implicated as the parties will presumably resume litigating the dispute "at the same procedural juncture where they left off in federal court." *Fox v. Brown Mem. Home, Inc.*, 761 F. Supp. 2d 718, 725 (S.D. Ohio 2011). Third, and lastly, the action is in the early stages of litigation, has not been on the Court's docket for an extended period of time, and discovery has not commenced. *Harper v. AutoAlliance, Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004). In light of this analysis, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismisses Counts II and III without prejudice.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiff's federal ADA claim fails to state a claim for relief.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss, (ECF No. 11), is **GRANTED IN PART** and Plaintiff's ADA claim (Count I) is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (ECF No. 11), is **DENIED IN PART** as to Plaintiff's state-law claims (Counts II and III); however, because the Court declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts II and III), Counts II and III are **DISMISSED WITHOUT PREJUDICE**.

Date: July 24, 2013

s/Patrick J. Duggan
PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
**Lori B. Bobbitt, Esq.**
**Ethan Vinson, Esq.**